UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

,

v.                                                          18-CR-131
                                                            DECISION AND ORDER
LARRY WATKINS, SR.,

        Defendant.

---

      The defendant, Larry Watkins, Sr., has been charged in a one-count indictment with violating 18 U.S.C. § 922(g)(1) and 924(a)(2) (possession of ammunition by a felon). The statute under which Watkins was charged criminalizes possession of a firearm or ammunition by a felon, but the indictment charges possession of only ammunition. That is so even though the government contends that the ammunition Watkins possessed was actually loaded in, and fired from, a firearm that was recovered after Watkins was arrested.[1]

      Watkins has moved for "Appeal and Reconsideration of Detention Order of Hon. Michael J. Roemer, United States Magistrate Judge." Docket Item 17. After a detention hearing on July 2 and July 16, 2018, Docket Items 8, and 14, Judge Roemer found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person or the community. Docket Item 15.

---

[1] The government has submitted, and the Court has watched, a video of the defendant apparently running down the street and shooting a firearm.

Watkins challenges that conclusion as well as Judge Roemer's decision that a detention hearing was warranted in the first place.

This Court will treat the defendant's motion not as a motion to reconsider but as a request for de novo review under 18 U.S.C. § 3145(b). For the reasons that follow, the Court agrees with Judge Roemer and continues the defendant's detention.

## I. WHETHER A DETENTION HEARING IS REQUIRED

Before a defendant can be detained pending trial, he must be charged in a case that meets the conditions in 18 U.S.C. § 3142(f). *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. O'Neill*, 144 F. Supp.3d 428, 431 (W.D.N.Y. 2015). Here, two subparagraphs in § 3142(f)(1) are relevant: "(A) a crime of violence . . . " and "(E) any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm." The government argues that the defendant's possession of ammunition is a crime of violence. Docket Item 24 at 5-7. In the alternative, the government argues that because the ammunition the defendant possessed was actually fired from a firearm by the defendant, even if the crime is not a crime of violence, it certainly "involves the possession or use of a firearm." *Id.* at 5. The defendant urges the Court to use a "categorical approach" and to look at only the crime as it is charged. Because possessing only ammunition cannot result in violence without a weapon, the defendant reasons, the crime with which he is charged is not a crime of violence; he also reasons that because he was charged with possessing only ammunition, the charge does not "involve[] the possession or use of a firearm."

### A. Statutory History and Plain Language

The Second Circuit has held that possession of a firearm under the statute charged here is, without more, a crime of violence. *See United States v. Dillard*, 214 F.3d 88, 104 (2d Cir. 2000). Moreover, this Court has extended that holding to possession of only ammunition (at least where there was a factual nexus to a crime of violence involving firearms). *United States v. Bagby*, 2015 WL 8678394 (W.D.N.Y. 2015). Based on that caselaw alone, a detention hearing was required here under 18 U.S.C. § 3142(f)(1)(A). *See also United States v. Carswell*, 144 F. Supp.2d 123, 133 (N.D.N.Y. 2001) (finding that "possession of ammunition by a convicted felon, 18 U.S.C. § 922(g)(1), constitutes a crime of violence as defined in the Bail Reform Act.").

Furthermore, a careful reading of Second Circuit caselaw suggests that the categorical approach should not apply to detention under 18 U.S.C. § 3142(f)(1)(E). And if that is so—and the Court therefore can consider the fact that the ammunition alleged to have been possessed was also alleged to have been actually fired from a firearm—then the charged felony involves the possession or use of a firearm, requiring a hearing under subparagraph (E).

A brief look at the Second Circuit decision in *Dillard*, *supra*, and the history of § 3142 is necessary to understand that conclusion. In *Dillard*, the primary question was whether being a felon in possession of a firearm was a "crime of violence," but in answering that question, the court considered a threshold question: whether a categorical approach or a conduct-specific inquiry was appropriate in determining whether a charged offense is a "crime of violence." The court "assume[d] without deciding . . . that the use or risk of violence must result from the categorical nature of the offense and that the statute would not be satisfied where a defendant used violence

3

in the commission of an offense whose nature ordinarily does not give rise to a substantial risk of violence." *Dillard*, 214 F.3d at 92. Although it assumed the answer to the question, the court gave some reasons why it likely would agree with most courts in following the categorical approach. The key to the court's reasoning was the language of 18 U.S.C. § 3156(a)(4), which defines a "crime of violence":

> A preliminary question on which the Act is not altogether clear is whether the possibility of use of force must result from the nature of the elements of the offense or whether the statute could be satisfied by an offense whose elements do not of themselves give rise to a likelihood of force, when committed in an uncharacteristically violent fashion by the particular defendant. (An example might be a characteristically nonviolent offense such as embezzlement, committed by a defendant who, in the course, threatens or commits violence against co-workers or co-conspirators.) . . . We are inclined to agree [with the district court that the latter example would not satisfy the statute]. Clause (B) specifies that the offense must '*by its nature*' involve the risk that force will be used, §3156(a)(4)(B) (emphasis in original). This suggests the requirement would not be satisfied when the risk of force results from the conduct or nature of the defendant rather than from the nature of the offense.

*Id.* at 92. Thus, the Second Circuit concluded that the categorical approach applied—and that the facts underlying the charge were not fair game—because the statute requires that the offense "**by its nature**" involve certain characteristics. *See id.* (emphasis added); *see also United States v. Singleton* 182 F.3d 7, 11 (D.C. Cir. 1999) ("the use of the word 'nature' refers to a legal charge rather than its factual predicate"). *Cf. Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001) ("Based upon the language of the [immigration] statute requiring analysis of the 'nature' of the crime, . . . the categorical approach is appropriate for determining whether an offense is a crime of violence under [18 U.S.C.] § 16(b).")

In part because there was a circuit split on the question of whether a felon in possession of a firearm committed a "crime of violence" under § 3142(f)(1)(A), *see*

4

*United States v. Ingle*, 454 F.3d 1082, 1085-86 (10th Cir. 2006) (and cases cited therein), Congress amended the statute in 2006 to add subparagraph (E). That subparagraph, as noted above, adds felonies that are not crimes of violence but that involve "the possession or use of a firearm" to those that require a detention hearing. Congress's decision to statutorily resolve the circuit split by using the words "involves . . . any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm . . ." thus reflects a conscious decision to depart from the categorical approach required by the definition of "crimes of violence" and instead to require a conduct-specific inquiry. *See* § 3142(f)(1)(E).[2] Therefore, even if 18 U.S.C. § 922(g)(1) is not a crime of violence under subparagraph (A), the crime here would be a felony that is not a crime of violence but that involves the possession or use of a firearm under subparagraph (E).

**B.     The Defendant's Constitutional Vagueness Argument**

"[T]he Government violates [the Fifth Amendment] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015). Notwithstanding the plain text and the statutory history, the defendant contends that this Court must

---

[2] "[I]t is generally presumed that Congress is . . . knowledgeable about existing laws pertinent to later-enacted legislation" and "familiar with previous interpretations of specific statutory language." *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 25 (2d Cir. 1989). "When Congress includes particular language in one section of a statute but omits it in another, this Court presumes that Congress intended a difference in meaning." *Dig. Realty Tr., Inc. v. Somers*, 138 S.Ct. 767, 777 (2018) (quoting *Loughrin* v. *United States*, 134 S.Ct. 2384, 2390 (2014)).

5

interpret § 3142(f)(1) narrowly, using the categorical approach, because, he argues, a conduct-specific inquiry would raise grave constitutional vagueness concerns. Docket Item 35 at 6. The defendant relies on *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018), and *Johnson v. United States*, 135 S.Ct. 2551 (2015), in support of his argument.[3]

For two reasons, this Court believes that the defendant's argument is misplaced: first, because the nature of pretrial detention differs from the what was at issue in those cases; and second, because even if pretrial detention were sufficiently consequential to be subject to such demanding scrutiny, a conduct-specific inquiry under § 3142(f)(1)(E) provides fair notice to defendants of what conduct may subject them to a detention hearing.

### 1. 18 U.S.C. § 3142—Regulatory, Not Penal

First, the defendant's argument is misplaced because the nature of pretrial detention is fundamentally different from the consequences at issue in *Johnson* and

---

[3] In *Johnson v. United States*, 135 S.Ct. 2551, 2563 (2015), the Court determined that the residual clause of the Armed Career Criminal Act, which provides for enhanced penalties upon certain convictions if a violator has three or more earlier convictions of a "serious drug offense" or a "violent felony," violates the due process clause. The act's residual clause categorically encompasses crimes involving "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). That language simply is too vague to survive due process scrutiny, the Court held. *Johnson*, 135 S.Ct. at 2563.

For similar reasons, in *Sessions v. Dimaya*, 138 S.Ct. 1204, 1223 (2018), the Court concluded that provisions of the Immigration and Nationality Act rendering deportable any alien convicted of an "aggravated felony" violated the due process clause. Specifically, the INA cross-references 18 U.S.C. § 16, the federal criminal code's definition of crime of violence. Section 16(b), the residual clause at issue in *Dimaya*, covers "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

*Dimaya*. "[T]he degree of vagueness that the Constitution allows depends in part on the nature of the enactment." *Dimaya*, 138 S.Ct. at 1212 (Kagan, J., announcing the judgment of the Court) (quoting, through the government's brief, *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982)). Whether the nature of the proceeding involved is criminal or civil is not conclusive; instead, the degree of permissible vagueness depends on the severity of the "consequences of imprecision." *Id.*

Both *Dimaya* and *Johnson* involved statutes that imposed severe penalties upon individuals falling within the scope of the imprecisely-worded statutes. *See Dimaya*, 138 S.Ct. 1204, 1213 (2018) (quoting *Jae Lee v. United States*, 137 S.Ct. 1958, 1968 (2017)) ("deportation is 'a particularly severe penalty,' which may be of greater concern to a convicted alien than 'any potential jail sentence.'"); *Johnson*, 135 S.Ct. 2551, 2555 (2015) ("Under the Armed Career Criminal Act of 1984, a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a 'violent felony' . . .").

In contrast, the Supreme Court has concluded that pretrial detention is not penal at all, but regulatory. *United States v. Salerno*, 481 U.S. 739, 747 (1987). "[T]he incidents of pretrial detention [are not] excessive in relation to the regulatory goal Congress sought to achieve," *id.*, and the "consequences of imprecision" for pretrial detention involve detention for a limited time period, *see Dimaya*, 138 S.Ct. at 1212 (Kagan, J., announcing the judgment of the Court). Of course, criminal defendants awaiting trial have a "strong interest in liberty," *Salerno*, 481 U.S. at 750; at the same time, however, pretrial detention for a defendant who poses a danger to the safety of

7

the community does not categorically "offend[] some principle of justice so rooted in the traditions and conscious of our people as to be ranked as fundamental," *id.* at 751 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)); *see also Rhem v. Malcolm*, 507 F.2d 333, 342 (2d Cir. 1974) (quoting 4 Blackstone, Commentaries 300) (pretrial detention "is only for safe custody, and not for punishment"). Because temporary detention before trial and after a bail hearing is not nearly as "severe a consequence" as deportation or an enhanced sentence of incarceration for being a repeat offender, any semantic similarities between the statute at issue in this case and those at issue in *Dimaya* or *Johnson* are of limited importance.[4]

Furthermore, a criminal defendant is not subject to pretrial detention simply because his case is subject to § 3142(f)(1). Instead, subsection (f) operates only to "limit[] the circumstances under which detention may be sought to the most serious of crimes." *Salerno*, 481 U.S. at 747. In fact, a criminal defendant may not be subject to pretrial detention under the statute unless "the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . the safety of any other person and the community.'" *Id.* at 741 (quoting 18 U.S.C. § 3143). Thus, the consequences of imprecision, under the circumstances presented here, are simply whether or not a defendant may be subject to an adjudicatory proceeding regarding his dangerousness or likelihood to flee. The statute thus provides due process even if its triggering language is imprecise.

---

[4] This assumes, of course, that "detention in a particular case [has not] become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987). But that is a different question—one that is not (yet) at issue here.

8

## 2. Fair Notice

The defendant also argues that *Johnson* requires a categorical approach in interpreting § 3142(f)(1) to provide fair notice to defendants. Docket Item 35 at 6. If anything, however, the Court's analysis suggests the opposite. And in light of that analysis, § 3142(f)(1)(E)'s conduct-specific inquiry provides clear and fair notice to the defendant of the conduct that may result in a pretrial detention hearing.

The residual clause that the Court struck down in *Johnson* enhances criminal penalties when the defendant has previously been convicted of a felony that "involves conduct that presents a serious potential risk of physical injury." 18 U.S.C. § 924(e)(2)(B). The statute under review—the Armed Career Criminal Act ("ACCA")—requires a categorical approach in determining whether predicate crimes are counted under the residual clause. *See Johnson*, 135 S.Ct. at 2557 (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)) ("the Armed Career Criminal Act requires courts to use a framework known as the categorical approach when deciding whether an offense" falls within its scope);[5] *see also Dimaya*, 138 S.Ct. at 1211 (categorical approach applies to determining whether conviction falls within the scope of 18 U.S.C. § 16(b)).

---

[5] Like the definition of "crime of violence" used in 18 U.S.C. § 3142(f)(1)(A) and under 18 U.S.C. § 16, ACCA requires a categorical approach in determining whether a defendant's prior crimes qualify because of the text that Congress used. *See Taylor v. United States*, 495 U.S. 575, 600 (1990). "Section 924(e)(2)(B)(i) defines 'violent felony' as any crimes punishable by imprisonment for more than a year that 'has an element'— not any crime that, in a particular case, involves—the use or threat of force." *Id.* "Read in this context, the phrase 'is burglary' in § 924(e)(2)(B)(ii) most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct." *Id.* The Court also considered the "daunting" "practical difficulties and potential unfairness of a factual approach," but that only complemented the statute's text and legislative history supporting a categorical approach. *Id.* The text and statutory history of 18 U.S.C. § 3142(f)(1)(E) suggest otherwise.

9

The Court reasoned that two features of the categorical approach mandated by ACCA's residual clause made the statute unconstitutionally vague: (1) estimating the risk posed by a crime and (2) determining how much risk it takes for a crime to qualify.  *Id.* at 2557-2558.  How serious is serious?  And how much risk is enough?  Those were the questions that troubled the court, *see id.*, especially because those questions must be answered as to "how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."  *Id.* at 2557 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).

Here, on the other hand, the language used by Congress under § 3142(f)(1)(E) directs a conduct-specific inquiry.  And unlike the language at issue in *Johnson*, the language at issue here provides clear notice of the conduct that might subject a criminal defendant to the possibility of a detention hearing: criminal conduct "that involves . . . the possession or use of a firearm."  That is pretty simple.  Therefore, this Court rejects the defendant's reading of the statute.

## II.     REVIEW OF DECISION ORDERING THE DEFENDANT'S PRETRIAL DETENTION

Judge Roemer's decision found that the government met its burden of showing by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community.  In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court takes into account available information concerning—

(1) the nature and circumstances of the offense charged . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### A. Nature and Circumstances of the Offense

As noted above, the defendant is charged with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). Video shows the defendant running down the street, chasing a car, apparently firing a weapon. The defendant does not deny firing the weapon; on the contrary, he contends that he fired the weapon, but only to defend his son. The fact that Watkins may have had what he thought was a good reason to discharge a weapon does not change the fact that as a convicted felon Watkins was prohibited from possessing the firearm or ammunition, nor does it lessen the danger he created. Moreover, Watkins is alleged to have possessed the ammunition only about eighteen months after he was discharged early from federal

11

supervised release after serving a ten-year sentence for a drug conspiracy conviction. Docket Item 1; Docket Item 24 at 8-10. The circumstances of the alleged offense are serious and dangerous.

### B. Weight of the Evidence

The government provided video surveillance footage of the incident to Judge Roemer, and this Court has watched that video as well. In light of the facts as depicted by the video, there is strong evidence against the defendant.

### C. History and Characteristics of the Defendant

The defendant has numerous prior convictions. They include one charge involving possession of a firearm with intent to use it and a subsequent guilty plea to menacing; one plea to attempted criminal possession of a loaded firearm, a felony that involved shooting at two individuals in a van; a ten-year felony plea involving a crack cocaine conspiracy in this Court; and a number of other offenses. His history is not good.

### D. Danger to the Community

Needless to say, the defendant's conduct involving the discharge of a firearm on a city street, together with the defendant's criminal history, suggests that the defendant's release would pose a direct danger to his community.

## **CONCLUSION**

For the reasons set forth above, this Court concludes that 18 U.S.C. § 3142(f)(1) requires a detention hearing in this case. The Court also finds that there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community. Therefore, the defendant's motion seeking to revoke Judge Roemer's detention order is DENIED.

SO ORDERED.

Dated: October 9, 2018
Buffalo, New York

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE