UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA                    18-CR-00131-LJV-MJR

                                            REPORT, RECOMMENDATION
                                            AND ORDER

         v.


LARRY WATKINS, SR.,

                    Defendant.
_____

         This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo

pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon

dispositive motions.  (Dkt. No. 3).  On June 21, 2018, a federal grand jury in the Western

District of New York returned an indictment charging Larry Watkins, Sr. ("defendant") with

possessing nine rounds of .45 caliber ammunition after having been previously convicted

of crimes punishable by imprisonment for a term of one year, in violation of Sections

922(g)(1) and 924(a)(2) of Title 18 of the United States Code (the "Indictment").  (Dkt. No.

1).  Before the Court are defendant's pre-trial motions for: (1) suppression of evidence

and statements; (2) dismissal of the Indictment; (3) a bill of particulars; (4) discovery and

inspection pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure; (5)

disclosure of *Brady* and *Jencks* material; (6) disclosure of informant identities, witness

lists and witness statements; (7) disclosure of grand jury material; (8) disclosure of

evidence pursuant to Rules 404(b), 609 and 807 of the Federal Rules of Evidence; (9)

preservation of rough notes; (10) preclusion of evidence from defendant's detention

hearing; and (11) leave to make other motions.  (Dkt. No. 45).

The Government filed a response to defendant's motions on November 26, 2018 and included a request for reciprocal discovery.  (Dkt. No. 46).  The parties appeared for oral argument on December 3, 2018.  The Court heard argument as to defendant's motions at that time.  The Court then agreed to defendant's request to continue the argument at a later date because the Government had recently produced additional discovery.  The parties appeared for the continuation of the oral argument on December 17, 2018.  At the conclusion of the argument, the Court instructed the Government to submit a supplemental brief addressing defendant's motion to dismiss the Indictment. The Government submitted the supplemental brief on December 21, 2018 (Dkt. No. 51) and the Court deemed the matter submitted at that time.[1]

## BACKGROUND

The following background information is taken from the Indictment (Dkt. No. 1), defendant's omnibus motions (Dkt. No. 45), briefs filed by the Government and defendant (Dkt. Nos. 46, 51, 52), a video recording of defendant's post-arrest statements to agents from the Federal Bureau of Investigation ("FBI") on June 22, 2018, and an FBI 302 describing defendant's arrest and statements.[2]

Defendant, born on January 19, 1967, was arrested at 6:05 a.m. on June 22, 2018 at 126 Stanton Street, Buffalo, New York, by members of the FBI Buffalo Division SWAT Team.  According to the FBI 302, defendant was transported to FBI Buffalo Division Field Office by Task Force Officer Geraldo Rondon and Special Agent Jason Galle.  During the transport, defendant was verbally advised of his *Miranda* rights.  Defendant verbally

---

[1] Defendant filed a reply to the Government's supplemental brief on December 27, 2018.  (Dkt. No. 52). The Court has also considered the arguments set forth therein.
[2] The Government submitted the video recording to the Court for its review.  The Court has viewed the video recording in its entirety.

responded "yes" after each line was read to him, indicating that he understood his rights. Upon arrival at the Buffalo Division Field Office, defendant was placed in an interview room.  Agent Galle again verbally advised defendant of his *Miranda* rights using an Advice of Rights form.  Galle and Officer Rondon confirmed that defendant could read and write English and then asked defendant to read the Advice of Rights form.  Defendant stated that he understood his rights and was willing to speak with Gale and Rondon.  Defendant then signed the Advice of Rights form indicating that he was willing to waive his rights and speak with officers.

During the interview, Galle informed defendant that the FBI had information that on June 16, 2018, defendant fired shots at a sport utility vehicle ("SUV") in front of defendant's residence after occupants of the SUV fired shots at a car driven by defendant's son, Larell Watkins.  Galle explained that shell casings were found at the location of the shooting and that defendant, who has three prior felony convictions, is charged with unlawful possession of ammunition.  Defendant told Galle and Rondon that on June 16, 2018, he was performing yard work outside his home when his son drove up to the residence.  An SUV pulled up next to his son's vehicle and defendant observed two occupants of the SUV fire shots at his son's vehicle.  Defendant indicated that he did not remember how many rounds he fired or if he hit the SUV.  He further stated that the gun involved was a .45 caliber firearm and that it holds approximately 12 rounds of ammunition.  He indicated that gun was empty after the shooting and that he was glad no one was hit.  Galle and Rondon repeatedly told defendant that they wanted to recover the firearm, and that any information defendant could provide as to its location would likely benefit him.  Defendant eventually informed Galle and Rondon that the firearm was at

1010 Smith Street, Buffalo New York. Defendant explained that the house belongs to his aunt who does not currently live there. Defendant further stated that he has a key and access to the residence because he looks after the property. Defendant gave verbal consent to Galle and Rondon to search 1010 Smith Street in order to retrieve the firearm. He also told them specifically where the gun could be found in the home. At the conclusion of the interview, Galle and two other officers recovered a loaded, Glock model 30, .45 caliber semi-automatic pistol, from the top shelf of a dresser in the front entrance of the residence.

## DISCUSSION

The Court will first address defendant's motions to suppress and to dismiss the Indictment before turning to defendant's non-dispositive omnibus discovery requests and the Government's request for reciprocal discovery.

### I.    *Suppression*

Defendant initially moved for a hearing as to the voluntariness of his statements to Galle and Rondon on June 22, 2018. (Dkt. No. 45, pg. 5). During oral argument of the omnibus motions, defense counsel clarified that he was not moving to suppress the statements on the basis that defendant did not receive *Miranda* warnings. Defense counsel argued instead that, during the interview on June 22, 2018, the agents tricked defendant by promising him that the gun would not be used against him. Defense counsel further argued that because of the agents' conduct, the Government should be precluded from offering evidence of the gun either at trial or at the time of sentencing. After some discussion with the Court, the parties agreed that an evidentiary hearing was unnecessary because the entire interview was on video. Thus, the Court could view the video and

4

determine if defendant was coerced into making any statements based on the agents'
conduct. The Court and the parties also agreed that any request to preclude evidence of
the gun during the trial or during sentencing was to be resolved by the District Court.

The Court has viewed the video of defendant's June 22, 2018 interview in its
entirety. To the extent that defendant is arguing that his statements on June 22, 2018
were involuntary because of trickery or misleading techniques on the part of Galle and
Rondon, the Court rejects this contention. Thus, for the reasons stated below, it is
recommended that the motion to suppress be denied.

The voluntariness inquiry, conducted under the Due Process Clause of the Fifth
Amendment, asks whether "the confession [is] the product of an essentially free and
unconstrained choice by its maker[.]". *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26
(1973). A determination as to whether a confession was obtained by coercion "is
determined only after careful evaluation of the totality of the surrounding circumstances."
*Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988). In applying the totality of the
circumstances test, a court is to consider the following factors: "(1) the characteristics of
the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement
officials." *Id.* at 901-02. The Court then makes a determination as to whether, given all
the circumstances, "the suspect's will was overborne and the confession was not
therefore a free and voluntary act." *United States v. Haak*, 215 F. Supp. 3d 218, 225
(W.D.N.Y. 2016) (*quoting Green*, 850 F.2d at 902). "[W]here a defendant claims that the
confession was induced by official trickery, deception or misrepresentation…it is the
defendant's obligation to show clear and convincing evidence of a material deception."
*United States v. Sacco*, 884 F. Supp. 734, 745-46 (W.D.N.Y. 1994). Put another way,

the defendant has the burden of showing "that the misrepresentations materially induced [him] to make incriminating statements." *United States v. Mitchell*, 966 F.2d 92, 100 (2d Cir. 1992).

In assessing the characteristics of defendant, the Court looks to his age, education, intelligence, criminal record and his familiarity with police questioning. *Green*, 850 F.2d at 902. Defendant was fifty-one years old at the time of the interview. During the interview, defendant stated that he obtained one GED while incarcerated and another GED while "on the streets". At the time of the arrest, defendant was employed and working to obtain an engineering certification. Based upon his conduct, manner and speech during the interview, defendant appears to be at least of average, if not above average, intelligence. In addition, defendant has three prior felony convictions. This fact, combined with various statements he made during the interview, indicates to the Court that defendant is not unfamiliar with police questioning or the criminal justice system in general.

In assessing the conditions of defendant's interrogation, the Court considers where the interrogation was held, the length of defendant's detention, and the presence or absence of counsel. *See Green*, 850 F.2d at 902. Here, defendant was interviewed at the Buffalo Division Field Office following his arrest. The interview, which began around 7:06 a.m. and concluded around 9:32 a.m., was approximately two and a half hours long. Defendant was handcuffed for the duration of the interview. However, he appeared to be relaxed, was sitting comfortably and was given water. Defendant was not represented by counsel. It is undisputed that defendant waived his *Miranda* rights, both orally and in writing, prior to the start of questioning. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969)

6

("Before petitioner made any incriminating statements, he received partial warnings of his constitutional rights; this is, of course, a circumstance quite relevant to a finding of voluntariness.").

The final circumstance the Court must consider in determining the voluntariness of defendant's statements is the conduct of the agents. Galle and Rondon were cordial and relaxed while interviewing defendant. Neither officer displayed a weapon at any time. They did not raise their voices, nor did they use force or the threat of force to compel defendant to speak with them. Agent Galle did employ certain techniques to encourage defendant to talk. Galle told defendant that he knew defendant fired at the SUV to protect his son. Galle expressed sympathy and understanding for defendant's actions. He told defendant that a judge or jury would also be sympathetic to him. Galle told defendant that their primary concern, at that time, was to find the gun in order to prevent further illegal activity or physical violence. He explained that if defendant told him where gun was presently located, he would not arrest the person who possessed it or the person defendant received it from. Galle also told defendant that discovery of the gun would not necessarily result in additional charges to defendant nor would the officers' inability to find the gun benefit defendant. Specifically, Galle explained that defendant was charged with possession of ammunition because of the shell casings found at the scene of the shooting. He explained that defendant would be charged with this conduct regardless of whether the gun was found. However, Galle repeatedly told defendant that if he helped them locate the gun, his cooperation and honesty would likely be looked at favorably by the prosecutor and the judge.

To begin, the Court finds that the agents did not trick or mislead defendant.  At no time did Gale or Rondon tell defendant that if he disclosed the location of the gun the charges against him would be dropped.  In fact, Galle informed defendant that he would be charged with possession of ammunition notwithstanding recovery of the gun.  Indeed, unlawful possession of ammunition is a violation of the same criminal statute and carries the same potential penalties as unlawful possession of a firearm.  Defendant argues that officers tricked him when they assured him that the gun would not be used against him. The Court is hard-pressed to accept this argument since defendant has not been charged with possession of a firearm.  Likewise, at this juncture of the proceeding, the gun found at 1010 Smith Street has not been "used against" defendant.  Finally, Galle's statements that defendant's cooperation would likely benefit him do not render his statements involuntary.  Galle simply informed defendant that if he helped them find the gun, his attorney could argue to both the prosecutor and the judge that defendant had been forthright and that his cooperation helped remove a dangerous firearm from the street. "[V]ague promises of leniency for cooperation…generally will not, without more, warrant a finding of coercion."  *United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002).  *See also United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995) ("[S]tatements to the effect that it would be to a suspect's benefit to cooperate are not improperly coercive.")

After evaluating the totality of the circumstances discussed above, the Court finds that none of defendant's statements on June 22, 2018 were obtained through coercion. Likewise, the Court finds that defendant fails to demonstrate that Galle or Rondon made material misrepresentations that induced him to make incriminating statements.  For these reasons, it is recommended that to the extent defendant seeks to suppress his

8

statements from June 22, 2018, the motion should be denied. To the extent that defendant is arguing that the Government should be precluded from offering evidence of the firearm during the trial or sentencing based upon statements or conduct by agents during the interview, that request is to be determined by Judge Vilardo.[3]

II.    _Dismissal of the Indictment_

Defendant moves to dismiss the Indictment on the grounds that it fails to allege that his possession of the ammunition affected interstate commerce. (Dkt. No. 45, pg. 15; Dkt. No. 52). Defendant argues that (1) the Indictment does not contain the term "interstate"; (2) there is no indication in the record that the Government presented the grand jury with evidence of the ammunition's connection to interstate commerce; and (3) the Indictment does not allege that the ammunition was manufactured outside of New York.

Rule 7 of the Federal Rules of Criminal Procedure requires that an indictment contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The purpose of an indictment is to sufficiently inform a defendant of the charges against him and to provide enough detail such that a defendant could plead double jeopardy in a future prosecution based on the same events. _United States v. Bustos de la Pava_, 268 F.3d 157, 162 (2d Cir. 2001). "An indictment, however, need not be perfect, and common sense and reason are more important than technicalities." _Id._ The Second Circuit has often explained that "an

---

[3] Defendant also requested a transcript of the June 22, 2018 interview. Defendant indicates that should the interview be introduced at trial, he will move to redact certain portions of his statement on the grounds that those portions are not probative and are highly prejudicial. Upon request of the Court during oral argument, the Government agreed to provide defense counsel with a transcript of the June 22, 2018 interview. A determination as to whether any portions of the interview should be redacted or precluded pursuant to Rules 401 or 403 of the Federal Rules of Evidence is to be made by the District Court at the time of trial.

indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (internal citations omitted).

Here, defendant is charged with violating Section 922(g)(1) of Title 18 of the United States Code. Section 922(g)(1) makes it unlawful "for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year…to ship or transport in interstate of foreign commerce, *or possess in or affecting commerce, any firearm or ammunition*; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *See* 18 U.S.C. §922(g)(1) (emphasis added). The Indictment reads as follows: "[o]n June 16, 2018…the defendant…having been previously been convicted on or about April 19, 1993 and on or about June 9, 1994…and on or about May 20, 2005…of crimes punishable by imprisonment for a term exceeding one year, *unlawfully did knowingly possess, in and affecting commerce*, *ammunition*, namely, nine (9) rounds of .45 caliber ammunition." (Dkt. No. 1, emphasis added) The Indictment satisfies the requirements of Rule 7. It contains a plain and concise statement of the essential facts of the crime, including that defendant, a convicted felon, possessed ammunition in and affecting commerce. Indeed, the Indictment sets forth each element of the crime using the same or very similar language as contained in the statute. Further, the Indictment provides defendant with adequate notice of the nature of the crime charged such that he can defend against it and assert a defense of double jeopardy if necessary.

The absence of the term "interstate" from the Indictment is of no consequence. The plain language of the statute makes it a crime for an individual who was previously

convicted of a felony to possess ammunition "in and affecting commerce". This is the very same phrase used in the Indictment. Further, courts have explained that the phrase "in and affecting commerce" refers to interstate commerce. *See United States v. Shelton*, 937 F.2d 140, 142-43 (5th Cir. 191) (noting that "commerce" in the phrase "in or affecting commerce" in Section 922 refers to interstate commerce and "the House report…makes clear that § 922 prohibits certain people from receiving, possessing or transporting firearms in interstate or foreign commerce or firearms which have been shipped or transported in interstate or foreign commerce"); *Scarborough v. United States*, 431 U.S. 563, 575 (1977) (finding that the phrase "in or affecting commerce" in Section 922(g) demands only "the minimal nexus that the firearm [or ammunition] have been, at some time, in interstate commerce"); *United States v. Shivers*, 390 F. Supp. 2d 1067 (N.D. FL. 2005) (rejecting defendant's argument that indictment should be dismissed as unconstitutional because Section 922(g) prohibits possession of a firearm "in or affecting commerce" without an express limitation to "interstate or foreign commerce" and noting that "in or affecting commerce" language satisfies jurisdictional elements required by the commerce clause).

Further, "where a criminal statute contains a jurisdictional element requiring a nexus with interstate commerce, the indictment need not specify the precise nature of that nexus." *United States v. Robare*, 8:07-CR-373, 2008 U.S. Dist. LEXIS 57191, *16 (N.D.N.Y. July 25, 2008); *accord United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998). Thus, the Government was not required to include, in the Indictment, the exact manner in which it will prove that the ammunition was possessed in or affecting commerce. As stated above, the nexus required is minimal and may only involve proof

that the ammunition possessed by defendant was manufactured outside of New York or, at some point, traveled in interstate commerce.  *See United States v. Sanders*, 35 F.3d 61, 62-63 (2d Cir. 1994) (collecting cases holding that the "in commerce element of § 922(g) is satisfied where ammunition possessed by a defendant had been manufactured elsewhere and passed through interstate commerce before defendant possessed ammunition"); *United States v. Chin*, 910 F. Supp. 889, 894 (EDNY 1995) ("Evidence that ammunition was manufactured outside of New York State, and that defendant was found in possession of the ammunition within the State, compels the conclusion that the ammunition crossed state lines at some point.").  At trial, the Government will be required to offer specific proof that the ammunition had a legitimate nexus to interstate commerce. Presently however, the allegations in the Indictment are sufficient.  Likewise, when an indictment is "complete on its face", it cannot be challenged on the basis that insufficient evidence was presented to the grand jury.  *United States v. Robare*, 8:07-CR-373, 2008 U.S. Dist. LEXIS 57191 (N.D.N.Y. July 25, 2008); *accord United States v. Calandra*, 414 U.S. 338, 344-45 (1974).  Thus, there is no basis to dismiss the Indictment on the speculative grounds that insufficient evidence as to an interstate connection was presented to the grand jury.  It is recommended that defendant's motion to dismiss the Indictment be denied.

III.    <u>Bill of Particulars</u>

Defendant requests a bill of particulars.  (Dkt. No. 45, pg. 12)  He argues that the allegations in the Indictment are "so general" that he cannot prepare a defense.[4]

---

[4] In his omnibus motions, defendant indicates that he is seeking information as to each and every transaction involving an alleged sale to a cooperating witness.  This case does not involve the sale of contraband and there are no transactions alleged in the Indictment.  Thus, this request is inapplicable and denied as moot.

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983).

The charges here are neither complex nor difficult to understand. The Indictment accuses defendant, who has three prior felony convictions, of unlawfully possessing nine rounds of .45 caliber ammunition on June 16, 2018. The Indictment provides the dates of defendant's previous convictions and the courts of conviction. Defendant has also been provided with a significant amount of discovery. He has the audio and video recordings of statements he made to Galle and Rondon on June 22, 2018. He has a written statement he provided to the Buffalo Police Department on June 16, 2018. The Government has disclosed FBI 302's, a Buffalo Police Department Incident Report, a Complaint Summary, photographs, copies of search warrants and search warrant returns, CPS laboratory reports, ATF reports of investigation related to the ammunition, a Google map with evidence recovery locations, and defendant's criminal history. Moreover, the

incident which precipitated the instant charge, namely the gunfire exchanged in front of defendant's residence on June 16, 2018, was recorded on video. Defendant has been provided with a copy of that video as well.

During oral argument, defendant emphasized that he has not been provided with a chain of custody analysis as to the ammunition referenced in the Indictment, and that he needs this information to adequately prepare his defense. The Government indicated that defendant has been provided with laboratory analysis of the ammunition and reports of the submitting officers. The Government declined to provide defendant with an explanation as to exactly where the ammunition was found or a list of which officers conducted specific tasks with respect to the ammunition. The Government further explained that this information would be provided, prior to trial, when defendant is given a witness list and a summary of witness testimony. The Court finds that the information sought by defendant relative to the chain of custody of the ammunition is akin to a bill of particulars and does not have to be provided. The Government's pretrial filings will undoubtedly describe where the ammunition was found and which officers handled its collection and analysis. Defendant will then have the opportunity to raise any chain of custody issues through motions *in limine* or objections to specific testimony at the time of trial. Indeed, it is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990).

Considering the allegations in the Indictment in conjunction with the materials produced in discovery, the Court finds that defendant has been provided with sufficient information to inform him of the charges against him, prepare a defense, avoid surprise

14

at trial, and ensure against double jeopardy.  For these reasons, defendant's motion for a bill of particulars is denied.

>   IV.   _Federal Rules of Criminal Procedure 12 and 16_

Defendant moves for discovery pursuant to Federal Rule of Criminal Procedure 16.  (Dkt. No. 45, pgs. 4-8).  Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant.  While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the government's case against him."  _United States v. Percevault_, 490 F.2d 126, 130 (2d Cir. 1974).  Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Federal Rules of Evidence 702, 703 and 705.  _See_ Fed. R. Crim. P. 16(a)(1).  Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."  _See_ Fed. R. Crim. P. 16(a)(2).

The Government represents that it has provided all discovery required under Rule 16 or has made the same available for inspection.  As described above, defendant has been provided with substantial discovery in this matter.  During oral argument, defense counsel indicated that he has been provided with all Rule 16 discovery with the exception of one item.  Defendant requests the names and address of the individuals riding in the

SUV involved in the incident on June 16, 2018.[5]  (Dkt. No. 45, pg. 4).  The Government objects to providing the names and addresses of these individuals on the grounds that the information is not discoverable under Rule 16.  The Court is in agreement with the Government that the names and address of the occupants do not fall under the disclosure requirements set forth in Rule 16.  Thus, the Court finds that the Government has provided all discovery required under Rule 16.  Defendant's request for discovery is denied as moot.  The Government is reminded that its disclosure obligations continue up through and during trial.[6]  *See* Fed. R. Crim. P. 16(c).

Defendant also moves, pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B), for written notification of any evidence the Government intends to use in their case-in-chief at trial.  (Dkt. No. 45, pg. 11).  The Government responds that it intends to use all of the evidence disclosed during voluntary discovery including, but not limited to, evidence contained in Laboratory Report 18-03463, defendant's statements, surveillance video, photographs, and any other evidence collected during the investigation.  Defendant's Rule 12(b)(4)(B) motion is denied as moot, and the Government should continue to comply with Rule 12 if and when new evidence becomes available and is anticipated to be used at trial.

---

[5] Based upon the parties' briefs and statements during oral argument, it appears that the SUV involved in the June 16, 2018 incident was stopped, that evening, at Genesee Avenue and Fillmore Street and three female occupants were identified.

[6] Defendant requests that the Government comply with the requirements for disclosure of expert testimony pursuant to Rule 16, including the disclosure of the names and qualifications of any expert witnesses to be called by the Government and a written summary of their testimony.  (Dkt. No. 45, pg. 10).  The Government responds that it intends to call Firearms Analyst Michael Dujanovich and ATF Special Agent Thomas Galluch.  (Dkt. No. 46, pg. 8).  Defendant's request for disclosure of expert testimony and evidence is granted, and the Government is expected to comply with all requirements in Rule 16, Federal Rules of Evidence 702, 703, and 705, and Judge Vilardo's pretrial order as they apply to expert testimony.

V.    *Disclosure of Informants*

Defendant moves for disclosure of the identities of any Government informants. (Dkt. No. 45, pg. 12).  The Government has a qualified privilege to withhold information concerning the names of confidential informants that it does not intend to call as witnesses.  *See Rovario v. United States*, 353 U.S. 53, 60-61 (1957) (the purpose of the privilege is to encourage citizens to report criminal activity).  To that end, a defendant seeking the identity of a confidential informant must make some evidentiary showing as to why disclosure is significant to determining defendant's guilt or innocence.  *United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (explaining that defendants face a "heavy burden" of establishing that disclosure is essential to the defense).  Defendant has made no such showing.  Moreover, the Government indicates that no informants have been used in this case.  For these reasons, defendant's motion for disclosure of informant identities is denied as moot.

VI.    *Disclosure of Government Witnesses and Witness Statements*

Defendant moves for disclosure of Government witnesses and production of their statements.  (Dkt. No. 45, pgs. 9, 14).  The Government objects to providing the identities of non-testifying witnesses.  The Government also states that it will comply with its standard practice of disclosing its trial witnesses and their prior statements in advance of trial.

The Government has no general duty to disclose the identities of its witnesses before trial.  *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990).  Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the government's possession

and relate to the subject matter of the witness's direct testimony ("3500 material"). *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. §3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a). Here, the Government indicates that it will provide a witness list when directed to do so by the District Court. The Government further indicates that will provide 3500 (*Jencks*) material at least two weeks prior to trial, or as required in the District Court's pretrial order. (Dkt. No. 46, pg. 13). Based upon the Government's representation, defendant's request for the disclosure of a trial witness list and witness statements is denied as moot.

With regard to witnesses who are not testifying at trial, including the individuals identified in the SUV on June 16, 2018, the Government is under no obligation to disclose their identities or statements. *See United States v. Rigas*, 583 F.3d 108, 125-26 (2d Cir. 2009). Should these individuals become witnesses at trial, defendant will have access to their identities as well as all relevant impeachment material and prior statements in the manner described above. In addition, if these individuals were to reveal exculpatory information at any time, the Government has an ongoing duty to disclose this information. Thus, the extent defendant requests the identities or statements of non-testifying witnesses, his motion is denied.

VII.    _Brady and Impeachment Material_

Defendant moves for the disclosure of any favorable, exculpatory or impeachment materials pursuant to _Brady_, _Giglio_ and their progeny.  (Dkt. No. 45, pgs. 9, 12-14).  The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made.  _Brady v. Maryland_, 373 U.S. 83, 87 (1963).  Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses.  _See Giglio v. United States_, 405 U.S. 150, 154-55 (1972).  The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  _United States v. Bagley_, 473 U.S. 667, 682 (1985).  Evidence may be material for _Brady_ purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence.  _United States v. Gill_, 297 F.3d 93, 104 (2d Cir. 2002).  "[A]s a general rule, _Brady_ and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant."  _United States v. Coppa_, 267 F.3d 132, 146 (2d Cir. 2001).  "[A]s long as a defendant possesses _Brady_ evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."  _Id._ at 144.

The Government responds that it is aware of its obligations and responsibilities under _Brady_ and acknowledges its continuing duty under _Brady_ to produce such material, if and when it is made aware of it.  The Government also agrees to provide impeachment _Giglio_ material, _i.e._, promises of leniency or immunity agreements with government

witnesses, plea and/or non-prosecution agreements and letters or memorandum of understanding regarding such, criminal arrest records of all prosecution witnesses, immoral, vicious or criminal acts committed by witnesses, prior inconsistent statements, any payments to witnesses or family members thereof, and all other promises or consideration given by government personnel to government witnesses or family members thereof, in accordance with the schedule set by the District Court prior to trial, and no later than two weeks prior to trial, when the Government produces and delivers 3500 material.

During oral argument, defendant argued that the names and addresses of the three occupants of the SUV stopped on the evening of June 16, 2018 constitute *Brady* material and must be disclosed.  Defendant contends that these individuals possess information about the shots fired at his son, and that this information will support his anticipated defenses of duress, justification or self-defense.[7]  Defendant further contends that this information would be relevant to the issue of punishment should he be convicted. The Court finds that the names and address of the occupants of the SUV do not constitute *Brady* material.  Defendant is charged with the unlawful possession of ammunition. Evidence or testimony regarding shots fired at defendant's son on June 16, 2018 would not exculpate defendant or tend to show that he did not unlawfully possess ammunition on that date.  There is no indication that these individuals have information that would impeach a Government witness.  If these individuals are called to testify at trial, defendant would be provided with their names and any prior statements at that time.  Moreover, the

---

[7] During oral argument, defense counsel indicated that he would be requesting jury charges of duress, justification and/or self-defense.  All decisions as to the appropriate jury charges to be given in this case will be made by Judge Vilardo at the time of trial.

Government represented, during oral argument, that it is not presently in possession of any FBI 302's, statements or other investigatory materials as to these individuals' involvement in the events of June 16, 2018.

Defendant further contends that he needs the pedigree information of these individuals in order to conduct his own investigation as to events of June 16, 2018. The Court disagrees. Should defendant be permitted, at the time of trial or sentencing, to present evidence of self-defense, justification or duress, he is already in possession of the information necessary to make this claim. The Government represents that defendant has (1) a video recording of the incident on June 16, 2018; (2) the 911 calls with respect to the incident; (3) a Buffalo Police Department report from that day that references shots fired; and (4) photographs of the SUV which show a bullet recovered from the vehicle. The Court fails to see what relevant information defendant would learn from these individuals that he does not already possess. Indeed, based upon representations at oral argument, the Government does not appear to dispute the fact that defendant fired shots at the SUV after its occupants fired shots at his son's vehicle. The Second Circuit has qualified that "the purpose of the Brady rule is not to provide a defendant with complete disclosure of all evidence in the government's file which might conceivably assist him in the preparation of his defense, but to assure that he will not be denied access to exculpatory evidence *known to the Government but unknown to him.*" *United States v. Ruggerio*, 472 F.2d 599 (2d Cir. 1973) (emphasis added). *See also Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) (*Brady* does not create an "open file" policy or give defendants the right to search through government files.).

Given the Government's representations and for the reasons just stated, defendant's motion to compel the production of *Brady/Giglio* material is denied as moot. The Government is reminded of its continuing *Brady* obligations and, consistent with *Coppa*, the Government shall timely disclose any *Brady* and *Giglio* material to defendant. *See United States v. Padovani*, 14-CR-00224, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

VIII.    <u>*Grand Jury Material*</u>

Defendant seeks disclosure of testimony and evidence presented to the grand jury, including any videos or photographs. (Dkt. No. 45, pg. 3). During oral argument, defendant indicated that he was provided the search warrant application for defendant's residence and that the application references gang activity.[8] Defendant asks the Court to review the grand jury proceeding to determine if the Government presented evidence of gang activity and, if so, whether this evidence was unduly prejudicial. The Government objects to the request.

Grand jury proceedings are presumed to be lawful and regular. *Hamlin v. United States*, 418 U.S. 87, 139 n. 23 (1974). Further, the tradition that grand jury proceedings are conducted in secret is "older than our Nation itself." *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973). To that end, a defendant is not entitled to inspect grand jury minutes and evidence without producing "concrete allegations of government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994). *See also United States v. Ulbricht*, 858 F.3d 71, 106-107 (2d Cir. 2017) (to be entitled to disclosure of grand jury proceedings, a

---

[8] Based upon the representations at oral argument, it appears that any references to gang activity involved defendant's adult sons and not defendant. There are no allegations in this case that defendant was involved in gang activity.

defendant must show a particularized need that outweighs the strong government and public policy interests in the secrecy of grand jury proceedings); *United States v. Ayeki*, 289 F. Supp. 2d 183, 186 (D. Conn. 2003) ("grand jury proceedings carry a presumption of regularity, and a review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct."). Similarly, the supervisory power of courts to create rules of grand jury procedure "is a very limited one, not remotely comparable to the power they maintain over their own proceedings." *United States v. Williams*, 504 U.S. 36, 50 (1992).

There is no basis here to disclose grand jury proceedings either to defendant or this Court. There is no indication of government misconduct and defendant has not shown a particularized need for this material. Defendant speculates, based on information in a search warrant application, that the grand jury may have heard prejudicial information regarding gang activity. This claim is plainly insufficient to warrant intrusion into grand jury proceedings. Thus, defendant's request for disclosure or Court review of grand jury material is denied.

IX.    *Federal Rules of Evidence 404(b) and 609*

Defendant moves for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rules of Evidence 404(b) or 609. (Dkt. No. 45, pg. 10). The Government states that it will disclose any evidence it intends to introduce at trial, pursuant to Federal Rules of Evidence 404(b), 608 and 609, in accordance with the District Court's pretrial order. The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b).

It is noted that defendant here has already been provided with his criminal history. The Government indicates that should defendant testify, it intends to question him regarding his prior convictions.

Based upon the Government's representation that it will disclose specific Rule 404(b) evidence as well as impeachment evidence at the time it is required to do so by the District Court, defendant's motion is denied as moot. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of Judge Vilardo at the time of trial.

### X.    *Federal Rules of Evidence 807*

Defendant moves for disclosure of any hearsay statements the Government will seek to introduce pursuant to Federal Rule of Evidence 803(24). (Dkt. No. 45, pg. 10). The requirements of Rule 803(24) have been transferred to Rule 807. The Government indicates that it will comply with all notice requirements set forth in the District Court's pretrial order. It is noted that a determination as to the admissibility of statements pursuant to Rule 807 is to be determined by the District Court at the time of trial. Therefore, defendant's request is denied as moot.

### XI.    *Preservation of Rough Notes*

Defendant moves for an order requiring all government agents and officers participating in the investigation of defendant to retain and preserve all rough notes taken as part of the investigation of this matter. (Dkt. No. 45, pg. 15). The Government responds that appropriate instructions will be given to the agents involved in the investigation regarding the preservation of evidence. The Court grants defendant's

motion and directs the Government to arrange for the preservation of all rough notes and related information.

### XII.    *Use of Evidence Entered at Detention Hearing*

Defendant seeks an order prohibiting the Government, at the time of trial, from using any statements made by him or his attorney during the detention hearing. (Dkt. No. 45, pg. 15). The Government represents that it does not intend to use these statements at trial. (Dkt. No. 46, pg. 17). Further, a determination as to admissibility of these statements, should the Government attempt to use them, is to be made by the District Court at the time of trial. Thus, defendant's request is denied as moot.

### XIII.    *Leave to File Further Motions*

Defendant moves to reserve the right to make further motions as necessary. (Dkt. No. 45, pg. 3). To the extent that defendant intends to bring motions based upon new information or evidence that has not yet been disclosed, his request for leave to file additional motions is granted. To the extent that defendant intends to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendant's request is denied without prejudice to bring the motion upon a showing of good cause for the untimely filing.

### XIV.    *Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of the defendant and which the defendant intends to introduce as evidence at trial, as well as the results or

reports of any physical or mental examinations or scientific tests or experiments made in connection with the case.  (Dkt. No. 46, pg. 19).  The Government's motion for reciprocal discovery is granted, and defendant is reminded that his disclosure obligations continue up through and during trial.  See Fed. R. Crim. P. 16(c).

Pursuant to Rule 807 of the Federal Rules of Evidence, the Government further requests advance disclosure of any statements the defendant intends to use at trial. Defendant should disclose any statements relevant to this request in accordance with the District Court's pretrial order.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant Larry Watkins, Sr.'s motions to suppress statements and to dismiss the Indictment be denied.  (Dkt. Nos. 45, 52).  Defendant's pre-trial motions (Dkt. Nos. 45, 52) are decided in the manner set forth above, and the Government's request for reciprocal discovery (Dkt. No. 46) is granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to the recommendation portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59.  Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES***

**THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED**.

Dated:        January 18, 2019
              Buffalo, New York

                                        */s/ Michael J. Roemer*
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge

27